UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DANIEL ALEXANDER, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>BROADSTAFF, LLC and CROWN CASTLE FIBER LLC,<br><br>    Defendants. | **Case No. 4:20-cv-1823**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Daniel Alexander (Alexander) brings this lawsuit to recover unpaid overtime wages and other damages from Defendants BroadStaff, LLC (BroadStaff) and Crown Castle Fiber LLC (Crown) (collectively, Defendants) under the Fair Labor Standards Act (FLSA).

2.      Alexander, and the other workers like him, regularly worked more than 40 hours a week.

3.      But Defendants did not pay these workers overtime as required by the FLSA.

4.      Instead, Defendants paid Alexander and other workers similarly situated to him the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek ("straight time for overtime").

5.      Alexander and the Putative Class Members never received a guaranteed salary.

6.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION & VENUE**

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District and Division.

9.      Specifically, Crown maintains its United States headquarters in Houston, Texas.

10.      BroadStaff has entered into contracts in Texas with Crown to provide workers, including Alexander and the Putative Class Members, to Crown. Indeed, BroadStaff conducts substantial business in this District and Division.

**PARTIES**

11.      Alexander worked for Defendants as a Construction Manager from approximately March 2016 until June 2018.

12.      Alexander's consent to be a party plaintiff is attached as Exhibit 1.

13.      Throughout his employment, Defendants paid him the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek (or, straight time for overtime).

14.      Alexander brings this action on behalf of himself and all other similarly situated workers who were paid by Defendants' straight time for overtime pay scheme.

15.      Defendants paid each of these workers the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek and failed to pay them overtime for hours worked in excess of 40 in a workweek as required by the FLSA.

16.      The collective of similarly situated employees sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, BroadStaff and/or Crown who were paid the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek (or, straight time for overtime) at any time during the last 3 years (Putative Class Members).**

17.     Defendant **BroadStaff, LLC** may be served with process by serving its registered agent:

**Carrie Hedaya, 1715 North Westshore Blvd., Suites 102 and 350, Tampa, Florida 33607**.

18.     Defendant **Crown Caste Fiber LLC** may be served with process by serving its registered

agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.**

## COVERAGE UNDER THE FLSA

19.     At all relevant times, Defendants have been employers within the meaning of the Section

3(d) of the FLSA. 29 U.S.C. § 203(d).

20.     At all relevant times, Defendants have been enterprises within the meaning of Section 3(r)

of the FLSA. 29 U.S.C. § 203(r).

21.     At all relevant times, Defendants have been enterprises engaged in commerce or in the

production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §

203(s)(1). Defendants have and have had employees engaged in commerce or in the production of goods

for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools,

cell phones, and personal protective equipment - that have been moved in or produced for commerce.

22.     In each of the last 3 years, Defendants have had annual gross volume of sales made or

business done of at least $1,000,000.

23.     At all relevant times, Alexander and the Putative Class Members were engaged in

commerce or in the production of goods for commerce.

## FACTUAL ALLEGATIONS

24.     "BroadStaff is a specialized staffing firm that supplies talent to the Technology &

Telecommunications Industries."[1]

---

[1] https://broadstaffglobal.com/about-broadstaff-2/ (last visited May 26, 2020).

25.     Crown is a technology and telecommunications provider that services various industries across the United States.[2]

26.     To complete their business objectives, Defendants hire personnel, such as Alexander, to perform telecommunication construction services.

27.     Alexander and the Putative Class Members are Defendants' employees.

28.     BroadStaff labels Alexander and the Putative Class Members as W-2 employees.

29.     Crown labels Alexander and the Putative Class Members to be contractors.

30.     But Crown does not hire these workers on a project-by-project basis.

31.     Rather, Crown hires and treats these workers just like regular, even if sometimes short term, employees.

32.     Many of these individuals worked for Defendants on a straight time basis.

33.     These straight time workers make up the proposed Putative Class.

34.     For example, Alexander worked for Defendants as a Construction Manager from March 2016 until June 2018.

35.     In June 2018, Crown hired Alexander reclassified Alexander as a W-2 employee and began paying him a salary.

36.     Throughout his employment with Defendants, Defendants paid him straight time for overtime.

37.     As a Construction Manager, Alexander's primary duties included working closely with the project team, ensuring Defendants' budgets and timetables are satisfied, overseeing building materials and deliveries of the same to the jobsite, and reporting daily to Defendants.

38.     Alexander did not exercise discretion and judgment as to matters of significant.

---

[2] hhttps://fiber.crowncastle.com/ (last visited May 26, 2020).

39.     Alexander was a blue-collar worker.

40.     Defendants paid Alexander and the Putative Class Members under their straight time pay scheme.

41.     Alexander and the Putative Class Members do not receive a salary.

42.     If Alexander and the Putative Class Members did not work, they did not get paid.

43.     Alexander and the Putative Class Members receive the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek.

44.     Alexander and the Putative Class Members do not receive overtime pay.

45.     This is despite the fact Alexander and the Putative Class Members often worked at least 10 hours a day, for as many as 7 days a week, for weeks at a time.

46.     Although Alexander typically worked up to 7 days a week, for 10+ hours a day, he did not receive overtime pay at the proper premium rate.

47.     Without the job performed by Alexander and the Putative Class Members, Defendants would not be able to complete their business objectives.

48.     Alexander and the Putative Class Members relied on Defendants for work and compensation.

49.     Alexander and the Putative Class Members worked in accordance with the schedule set by Defendants and/or their clients.

50.     Alexander and the Putative Class Members cannot subcontract out the work they are assigned by Defendants.

51.     Alexander and the Putative Class Members must follow Defendants' policies and procedures.

52.     Alexander and the Putative Class Members' work must adhere to the quality standards put in place by Defendants.

53.     Alexander and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

54.     Alexander and the Putative Class Members did not market their services while employed by Defendants.

55.     Alexander and the Putative Class Members worked exclusively for Defendants during the relevant period.

56.     Alexander and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

57.     Defendants set Alexander and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Defendants.

58.     At all relevant times, Defendants maintained control, oversight, and direction of Alexander and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

59.     Alexander's work schedule is typical of the Putative Class Members.

60.     Defendants control Alexander and the Putative Class Members' pay.

61.     Likewise, Defendants control Alexander and the Putative Class Members' work.

62.     Alexander and the Putative Class Members' work must adhere to the quality standards put in place by Defendants.

63.     Alexander and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

64.     Defendants know Alexander and the Putative Class Members work for 10 or more hours a day, for as many as 7 days a week.

65.     Defendants' records reflect the fact Alexander and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

66.     Alexander and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

67.     Instead, Alexander and the Putative Class Members are paid on a straight time basis.

68.     Defendants set these workers' schedules and compensation; supervise them; require them to adhere to strict guidelines, directives, and their policies and procedures.

69.     Defendants control Alexander and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

70.     While working for Defendants, Defendants controlled all the significant or meaningful aspects of the job duties Alexander and the Putative Class Members perform.

71.     Defendants exercise control over the hours and locations Alexander and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

72.     Even when Alexander and the Putative Class Members work away from Defendants' offices without the constant presence of Defendants' supervisors, Defendants still control significant aspects of their job activities by enforcing mandatory compliance with their policies and procedures.

73.     Alexander and the Putative Class Members do not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

74.     Defendants make these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Alexander and the Putative Class Members work.

75.     Alexander and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

76.     The daily and weekly activities of Alexander and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Defendants.

77.     Defendants prohibit Alexander and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Alexander and the Putative Class Members to follow Defendants' policies, procedures, and directives.

78.     All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

79.     All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

80.     All of the Putative Class Members work in excess of 40 hours each week.

81.     Defendants uniformly deny Alexander and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

82.     Alexander and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

83.     Defendants' straight time policy violates the FLSA because it deprives Alexander and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

84.     Defendants knew Alexander and the Putative Class Members worked more than 40 hours a week.

85.     Defendants knew, or showed reckless disregard for whether, the Putative Class Members were entitled to overtime under the FLSA.

86.     Nonetheless, Defendants did not pay Alexander and the Putative Class Members overtime.

87.     Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

**CAUSE OF ACTION**
**FLSA VIOLATIONS**

88.     Alexander brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

89.     Defendants violated, and are violating, the FLSA by failing to pay Alexander and the Putative Class Members overtime.

90.     Defendants failed to guarantee the Alexander and Putative Class Members a salary.

91.     Defendants failed to pay the Alexander and Putative Class Members overtime.

92.     Defendants paid the Alexander and Putative Class Members straight time for overtime.

93.     Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

94.     Defendants' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

95.     Accordingly, Alexander and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

**COLLECTIVE ACTION ALLEGATIONS**

96.     Alexander brings this claim as a collective action under the FLSA.

97.     The Putative Class Members were victimized by Defendants' pattern, practice, and/or policy which is in willful violation of the FLSA.

98.     Other Putative Class Members worked with Alexander and indicated they were paid in the same manner (straight time for overtime) and performed similar work.

99.     Based on his experiences with Defendants, Alexander is aware that Defendants' illegal practices are imposed on the Putative Class Members.

100.    The Putative Class Members are similarly situated in all relevant respects.

101.    The Putative Class Members are blue-collar workers.

102.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

103.    The illegal straight time for overtime policy that Defendants imposes on Alexander is likewise imposed on all Putative Class Members.

104.    Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

105.    The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

106.    The overtime owed to Alexander and the Putative Class Members will be calculated using the same records and using the same formula.

107.    Alexander's experiences are therefore typical of the experiences of the Putative Class Members.

108.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

109.    Alexander has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

110.    Like each Putative Class Member, Alexander has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

111.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

112.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

113.    Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

114.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

115.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

116.    Among the common questions of law and fact are:

    a.   Whether Defendants employed the Putative Class Members within the meaning of the FLSA;

    b.   Whether Defendants' decision to pay straight time for overtime to these workers was made in good faith;

    c.   Whether Defendants' violation of the FLSA was willful; and

    d.   Whether Defendants' illegal pay practice applied uniformly across the nation to all Putative Class Members.

117.    Alexander and the Putative Class Members sustained damages arising out of Defendants' illegal and uniform straight time for overtime scheme.

118.    Alexander knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

119.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

120.    Defendants are liable under the FLSA for failing to pay overtime to Alexander and the Putative Class Members.

121.    Consistent with Defendants' illegal straight time for overtime policy, Alexander and the Putative Class Members are not paid the proper premium overtime compensation when they work more than 40 hours in a workweek.

122.    As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engage in a pattern, practice, and/or policy of violating the FLSA with respect to Alexander and the Putative Class Members.

123.    Defendants' illegal straight time for overtime policy deprived Alexander and the Putative Class Members of the premium overtime wages they are owed under federal law.

124.    Defendants are aware, or should have been aware, that the FLSA required them to pay Alexander and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

125.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

126.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

127.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## JURY DEMAND

Alexander demands a trial by jury.

## PRAYER

WHEREFORE, Alexander, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a.    An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.  A judgment against Defendants awarding Alexander and the Putative Members all
    their unpaid overtime compensation and an additional, equal amount, as liquidated
    damages;

c.  Issuance of a declaratory judgment that the practices complained of in this Complaint
    are unlawful under the FLSA;

d.  An order awarding attorney's fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Andrew W. Dunlap*
**Andrew W. Dunlap**
TX Bar No. 24078444
Federal ID No. 1093163
**Taylor A. Jones**
TX Bar No. 24107823
Federal ID No. 3348814
**Josephson Dunlap LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
adunlap@mybackwages.com
tjones@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
Federal ID No. 21615
**Bruckner Burch, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**